UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA



## *CENTRAL DISTRICT OF CALIFORNIA*

## *APPROVED FORM FOR PRODUCING A*

# CHAPTER 11 DISCLOSURE STATEMENT

WordPerfect Format

**F 3017-1**

Robert S. Altagen, Esq., SBN 056444
Law offices of Robert S. Altagen, APC
1111 Corporate Center Drive Ste 201
Monterey Park Ca 91746
Tel: 323) 268-9588
Fax: 323) 268-8742

Attorneys for Debtor, Food-O-Mex Corporation

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>FOOD-O-MEX CORPORATION<br><br>                    Debtor | **Bk. No.** <u>2:09-bk-036737</u><br><br>In a Case Under Chapter<br>11 of the Bankruptcy Code<br>(11 U.S.C. § 1101 et seq.)<br><br>**ORIGINAL DISCLOSURE STATEMENT<br>DESCRIBING <u>ORIGINAL</u> CHAPTER 11<br>PLAN**<br><br>**Disclosure Statement Hearing**<br><br>Date:    July 14, 2010<br>Time:    11:00 a.m.<br>Ctrm:    1568 – 15th floor<br>            255 E. TEMPLE STREET<br>            LOS ANGELES, CA 90012<br><br>**Plan Confirmation Hearing**<br>Complete This Section When<br>        Applicable<br>Date:   <u>   TBD        </u><br>Time:   <u>   TBD        </u><br>Ctrm:   <u>1568</u><br>         <u>255 E. TEMPLE STREET</u><br>         <u>LOS ANGELES, CA 90012</u> |

**F 3017-1**

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . 1
     A.   Purpose of This Document . . . . . . . . . . . . 1
     B.   Deadlines for Voting and Objecting; Date of Plan
          Confirmation Hearing . . . . . . . . . . . . . . 2
          1.   Time and Place of the Confirmation
               Hearing . . . . . . . . . . . . . . . . . . 3
          2.   Deadline for Voting For or Against the
               Plan . . . . . . . . . . . . . . . . . . . 3
          3.   Deadline for Objecting to the Confirmation
               of the Plan . . . . . . . . . . . . . . . . 3
          4.   Identity of Person to Contact for More
               Information Regarding the Plan . . . . . . 3
     C.   Disclaimer . . . . . . . . . . . . . . . . . . . 3

II.  BACKGROUND . . . . . . . . . . . . . . . . . . . . . 4
     A.   Description and History of the Debtor's
          Business . . . . . . . . . . . . . . . . . . . . 4
     B.   Principals/Affiliates of Debtor's Business . . . 4
     C.   Management of the Debtor Before and After the
          Bankruptcy . . . . . . . . . . . . . . . . . . . 4
     D.   Events Leading to Chapter 11 Filing . . . . . . 4
     E.   Significant Events . . . . . . . . . . . . . . . 6
          1.   Bankruptcy Proceedings . . . . . . . . . . 6
          2.   Other Legal Proceedings . . . . . . . . . . 7
          3.   Actual and Projected Recovery of
               Preferential or Fraudulent Transfers . . . 7
          4.   Procedures Implemented to Resolve Financial
               Problems . . . . . . . . . . . . . . . . . 7
          5.   Current and Historical Financial
               Conditions . . . . . . . . . . . . . . . . 8

III. SUMMARY OF THE PLAN OF REORGANIZATION . . . . . . . . 8
     A.   What Creditors and Interest Holders Will Receive
          Under the Proposed Plan . . . . . . . . . . . . 8
     B.   Unclassified Claims . . . . . . . . . . . . . . 8
          1.   Administrative Expenses . . . . . . . . . . 8
          2.   Priority Tax Claims . . . . . . . . . . . . 9
     C.   Classified Claims and Interests . . . . . . . . 11
          1.   Classes of Secured Claims . . . . . . . . . 11
          2.   Classes of Priority Unsecured Claims . . . 12
          3.   Classes of General Unsecured Claims . . . . 13
          4.   Class(es) of Interest Holders . . . . . . . 13
     D.   Means of Effectuating the Plan . . . . . . . . . 14
          1.   Funding for the Plan . . . . . . . . . . . 14
          2.   Post-Confirmation Management . . . . . . . 14
          3.   Disbursing Agent . . . . . . . . . . . . . 14
     E.   Risk Factors . . . . . . . . . . . . . . . . . . 14
     F.   Other Provisions of the Plan . . . . . . . . . . 15
          1.   Executory Contracts and Unexpired Leases . . 15
               a.   Assumptions . . . . . . . . . . . . . . 15
               b.   Rejections . . . . . . . . . . . . . . 15
          2.   Changes in Rates Subject to Regulatory
               Approval . . . . . . . . . . . . . . . . . 16

        3.    Retention of Jurisdiction . . . . . . . . .  16
     G.  Tax Consequences of Plan . . . . . . . . . . .  16

IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES . . . . . .  16
     A.  Who May Vote or Object . . . . . . . . . . . .  17
         1.  Who May Object to Confirmation of the
             Plan . . . . . . . . . . . . . . . . . . .  17
         2.  Who May Vote to Accept/Reject the Plan . . .  17
             a.  What is an Allowed Claim/Interest . . .  17
             b.  What Is an Impaired Claim/Interest . . .  18
         3.  Who is Not Entitled to Vote . . . . . . . .  19
         4.  Who Can Vote in More Than One Class . . . . .  19
         5.  Votes Necessary to Confirm the Plan . . . .  20
         6.  Votes Necessary for a Class to Accept the
             Plan . . . . . . . . . . . . . . . . . . .  20
         7.  Treatment of Nonaccepting Classes . . . . .  20
         8.  Request for Confirmation Despite Nonacceptance
             by Impaired Class(es) . . . . . . . . . . .  21
     B.  Liquidation Analysis . . . . . . . . . . . . .  21
     C.  Feasibility . . . . . . . . . . . . . . . . . .  24

V.   EFFECTS OF CONFIRMATION OF PLAN . . . . . . . . . .  26
     A.  Discharge . . . . . . . . . . . . . . . . . . .  26
     B.  Revesting of Property in the Debtor . . . . . .  26
     C.  Modification of Plan . . . . . . . . . . . . .  26
     D.  Post-Confirmation Status Report . . . . . . . .  27
     E.  Quarterly Fees . . . . . . . . . . . . . . . .  27
     F.  Post-Confirmation Conversion/Dismissal . . . . .  27
     G.  Final Decree . . . . . . . . . . . . . . . . .  28

VI.  SUPPORTING DECLARATIONS . . . . . . . . . . . . . .  29

EXHIBIT A - LIST OF ALL ASSETS . . . . . . . . . .  31
EXHIBIT B - FINANCIAL STATEMENT . . . . . . . . . .  32-75
EXHIBIT C - UNEXPIRED LEASES TO BE ASSUMED . . . . .  76
EXHIBIT D - EXECUTORY CONTRACTS TO BE ASSUMED . . . .  77
EXHIBIT E - LIQUIDATION ANALYSIS . . . . . . . . . .  78
EXHIBIT F - LIST OF ADMINISTRATIVE EXPENSE CLAIMS . . .  79
EXHIBIT G - LIST OF PRIORITY UNSECURED CLAIMS . . . . .  80
EXHIBIT H - LIST OF GENERAL UNSECURED CLAIMS . . . . .  81
EXHIBIT I - LIST OF EQUITY INTERESTS. . . . . . . . .  82

# I.

## INTRODUCTION

Food-O-Mex Corporation, (hereinafter "Food-O-Mex and/or Debtor") is the Debtor in a Chapter 11 bankruptcy case.

On October 1, 2009, Food-O-Mex Corporation commenced a bankruptcy case by filing an emergency Voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq., On October 16, 2009, Debtor submitted and filed all deficient schedules. Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. Food-O-Mex is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a Reorganization plan. In other words, the Proponent seeks to accomplish payments under the Plan by December 15, 2010. The Effective Date of the proposed Plan is December 15, 2010.

## A.   Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1)   **WHO CAN VOTE OR OBJECT,**

(2)   **WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

(3)   **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

(4)   **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

(5)   **WHAT IS THE EFFECT OF CONFIRMATION, AND**

(6)   **WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

**B.   Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE

1  NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS

2  THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL

3  CREDITORS AND INTEREST HOLDERS IN THIS CASE.

4  **1.   Time and Place of the Confirmation Hearing**

5  The hearing where the Court will determine whether or not to

6  confirm the Plan will take place on ____[TBD by Court]_, in

7  Courtroom 1568, United States Bankruptcy Court, 255 E. Temple

8  Street, Los Angeles, Ca 90012.

9  **2.   Deadline For Voting For or Against the Plan**

10  If you are entitled to vote, it is in your best interest to

11  timely vote on the enclosed ballot and return the ballot in the

12  enclosed envelope to The Law offices of Robert S. Altagen, Esq.,

13  1111 Corporate Center Drive, Ste 201, Monterey Park Ca 91754.

14  Your ballot must be received by __[TBD by the Court]___ or

15  it will not be counted.

16  **3.   Deadline For Objecting to the Confirmation of the Plan**

17  Objections to the confirmation of the Plan must be filed

18  with the Court and served upon  The Law offices of Robert S.

19  Altagen, Esq., 1111 Corporate Center Drive, Ste 201, Monterey

20  Park Ca 91754 by_[TBD by the Court]_.

21  **4.   Identity of Person to Contact for More Information**

22  **Regarding the Plan**

23  Any interested party desiring further information about the

24  Plan should contact The Law offices of Robert S. Altagen, Esq.,

25  1111 Corporate Center Drive, Ste 201, Monterey Park Ca 91754.

26  **C.   Disclaimer**

27  The financial data relied upon in formulating the Plan is

28  based on documents provided by Philip Manly, Vice-

President/General Manager of Debtor. The information contained in this Disclosure Statement is provided by Philip Manly, Vice-President/General Manager of the Debtor. The Plan Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's best knowledge.  The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II.

### BACKGROUND

**A.   Description and History of the Debtor's Business**

The Debtor is a Corporation.

The Debtor is in the business of manufacturing and distributing corn and flour tortillas, and its operation is located at 2928 N. Main Street, Los Angeles California.

The Debtor has been family owned and in this business since approximately 1946.  Food-O-Mex Corp was founded in 1973.

**B.   Principals/Affiliates of Debtor's Business**

Philip Manly is the vice-president/general manager of the Debtor's business. He is taking approximately $1,800 per week in compensation at this time. There are no affiliates.

A Notice of Setting insider compensation was filed by Debtor on or about November 25, 2009.

**C.   Management of the Debtor Before and After the Bankruptcy**

Philip Manly has been the vice president and general manager, both before and after the bankruptcy.

**D.   Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that led to the

1  _filing_ of this Chapter 11 case:

2  As previously mentioned, Debtor is in the business of the
3  manufacturing and distribution of corn and flour tortillas. In
4  the years of 2007 through 2008, corn prices skyrocketed and
5  Debtor was unable to raise prices fast enough to recover the
6  increase in the cost of corn. This led to the Debtor falling
7  behind on payments to one of their vendors, with Minsa
8  Corporation (hereinafter "Minsa"). In fact, Debtor was behind
9  over 90 days and about $260,000 to Minsa. Minsa was very
10  aggressive in trying to collect against Debtor and eventually
11  filed a federal lawsuit against Debtor.

12  As a result, Debtor attempted to settle with Minsa, and
13  eventually entered into a Commercial Security agreement and
14  executed a Promissory Note (hereinafter "Agreement or Note") in
15  the amount of $267,500 on or about January 13, 2009. The
16  agreement included a security interest on Debtor's equipment.

17  The payments agreed upon pursuant to the Commercial Security
18  agreement and note with Minsa were payable in fifty two(52)weekly
19  installments of $1,750 or about $7,583.33 per month. Throughout
20  the bankruptcy, Minsa has continued to work with Debtor in
21  allowing the operation of the business to continue.

22  At that same time, Debtor was current with their mortgage
23  payments to Aurora bank/Lehman Brothers (hereinafter the "Bank"),
24  who held a deed of trust against Debtor's real property located
25  at 2928 North Main Street, Los Angeles, Ca 90031.

26  Unfortunately, it quickly became clear that Debtor would run
27  into difficulties in keeping up with payments to the Bank, given
28  the new payment arrangement with Minsa.

Debtor believed it was time to sell the company and entered into negotiations with a potential buyer. Debtor had a Letter of Intent from the buyers with a close date of July 1, 2009. Unfortunately, the buyers lapsed the close date but still had interest. Debtor maintained the Bank informed as to what was going on.

However, on or about August 31, 2009, the Bank recorded a Notice of Trustee Sale and set same for September 21, 2009. Said sale was then postponed to October 5, 2009.

As such, Debtor had no alternative but to file Chapter 11 to save the building from sale.

In addition, to date, Debtor has been able to maintain approximately 50 people employed.

**E.   Significant Events During the Bankruptcy**

   **1.   Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred _during_ this case:

The Court has approved the employment of the following professionals: An application to employ counsel was timely filed, and an Order was entered approving the employment of the Law offices of Robert S. Altagen on December 14, 2009.

Debtor has filed its monthly operating reports and is current up to April, 2010 on his reporting requirements.

A Motion to Dismiss was filed by Minsa Corporation on or about April 13, 2010, primarily citing Debtor's missing monthly operating reports. However, Debtor has cured said deficiency. Minsa's motion to dismiss was set for hearing on May 5, 2010. Debtor and Minsa entered into a stipulation to continue said

**F 3017-1**

1  hearing to May 20, 2010. An Order re: Stipulation to Continue the

2  Motion to Dismiss was entered on April 30, 2010.

3      The office of the United States Trustee also filed a Motion

4  to Dismiss on April 16, 2010 and set a hearing for May 20, 2010.

5      Debtor filed an opposition to the Motion to Dismiss on or

6  about May 6, 2010.  The Motion was heard on May 20, 2010 and

7  continued to July 22, 2010.

8      Currently, the following significant adversary proceedings

9  and motions are still pending: Currently None.

10     **2.    Other Legal Proceedings**

11     In addition to the proceedings discussed above, the Debtor

12 is currently involved in the following nonbankruptcy legal

13 proceedings:    None.

14     **3.    Actual and Projected Recovery of Preferential or**

15         **Fraudulent Transfers**

16     Debtor claims there are no preference or fraudulent

17 conveyance actions that exist or expected to be filed.

18     **4.    Procedures Implemented to Resolve Financial Problems**

19     To attempt to fix the problems that led to the bankruptcy

20 filing, Debtor has implemented the following procedures:

21     Debtor has lowered costs on both operations and raw

22 materials. In addition, although Debtor has been able to maintain

23 most of its employees, some employees where laid off. This has

24 allowed Debtor to realize additional profits.

25     Additionally, Debtor also continues to seek the infusion of

26 capital from a possible third party.

27     Lastly, the vice president/general manager, Phil Manly, is

28 considering provided a personal loan to the Debtor if necessary

1  in order to fund the plan.

2      **5.   Current and Historical Financial Conditions**

3      The identity and fair market value of the estate's assets

4  are listed in Exhibit A.   See also the Debtor's financial history

5  set forth in Exhibit B.

6                              **III.**

7                **SUMMARY OF THE PLAN OF REORGANIZATION**

8  **A.   What Creditors and Interest Holders Will Receive Under The**

9      **Proposed Plan**

10     As required by the Bankruptcy Code, the Plan classifies

11 claims and interests in various classes according to their right

12 to priority. The Plan states whether each class of claims or

13 interests is impaired or unimpaired.   The Plan provides the

14 treatment each class will receive.

15 **B.   Unclassified Claims**

16     Certain types of claims are not placed into voting classes;

17 instead they are unclassified. They are not considered impaired

18 and they do not vote on the Plan because they are automatically

19 entitled to specific treatment provided for them in the

20 Bankruptcy Code. As such, the Proponent has <u>not</u> placed the

21 following claims in a class.

22     **1.   Administrative Expenses**

23     Administrative expenses are claims for costs or expenses of

24 administering the Debtor's Chapter 11 case which are allowed

25 under Code section 507(a)(1).   The Code requires that all

26 administrative claims be paid on the Effective Date of the Plan,

27 unless a particular claimant agrees to a different treatment.

28     The following chart lists <u>all</u> of the Debtor's § 507(a)(1)

administrative claims and their treatment under the Plan(see
Exhibit F for detailed information about each administrative
expense claim):

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Law offices of Robert S. Altagen, APC | EST. TOTAL= $25,000 | Paid in Full on Effective Date |
| Clerk's Office Fees | $0 | Paid in full on Effective |
| Office of the U.S. | $0 | Paid in full on Effective |
| | EST. TOTAL $25,000 | |

<u>Court Approval of Fees Required</u>:

The Court must rule on all fees listed in this chart before
the fees will be owed. For all fees except Clerk's Office fees
and U.S. Trustee's fees, the professional in question must file
and serve a properly noticed fee application and the Court must
rule on the application.  Only the amount of fees allowed by the
Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay an estimated
total of $25,000 worth of administrative claims on the Effective
Date of the Plan unless the claimant has agreed to be paid later
or the Court has not yet ruled on the claim.  As indicated
elsewhere in this Disclosure Statement, Debtor will have a
sufficient amount of cash on hand on the Effective Date of the
Plan.  The source of this cash will be debtor funding or
potential loan to debtor.

**2.   Priority Tax Claims**

Priority tax claims are certain unsecured income,
employment and other taxes described by Code Section 507(a)(8).
The Code requires that each holder of such a 507(a)(8)

priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the date of the assessment of such tax.

The following chart lists _all_ of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment | |
|---|---|---|---|
| Name: _IRS_ (claim no. 1) Type of tax: _Federal_ Date tax assessed: _10/15/2009_ | $25,921.95 | Pymt interval:(monthly over 60 months) Pymt amt/interval Begin date: 12/15/2010 End date: 12/15/2015 Interest Rate 0% Total Payout Amount | = $432.02  $25,921.95 |
| Name: _Franchise Tax Board_ (claim no.5) Type of tax: _State tax_ Date tax assessed: _1/25/2010_ | $1,201.94 | Pymt interval:(monthly over 60 months) Pymt amt/interval Begin date: 12/15/2010 End date: 12/15/2015 Interest Rate 0% Total Payout Amount | = $20.03  =$1,201.94 |
| Name: _EDD_ (claim no. 7) Type of tax: _employment_ Date tax assessed: _2/25/2010_ | $3,914.90 | Pymt interval:(monthly over 60 months) Pymt amt/interval Begin date: 12/15/2010 End date: 12/15/2015 Interest Rate 0% Total Payout Amount | = $65.25  $3,914.90 |
| Name LA County Treasurer & Tax Collector (claim no. 8) Type of tax:property Date tax assessed: _10/15/2009_ | $65,848.03 | Pymt interval:(monthly over 60 months) Pymt amt/interval Begin date: 12/15/2010 End date: 12/15/2015 Interest Rate 0% Total Payout Amount | = $1,097.47  $65,848.03 |

| | | |
|---|---|---|
| Name: LA County Treasurer & Tax Collector (claim no.9)<br>Type of tax:*property*<br>Date tax assessed: *10/15/2009* | $66,110.55 | Pymt interval:(monthly over 60 months)<br>Pymt amt/interval = $1,101.84<br>Begin date: 12/15/2010<br>End date: 12/15/2015<br>Interest Rate 0%<br>Total Payout Amount $918.20 |
| Name: Franchise Tax Board (claim no.11)<br>Type of tax: *State*<br>Date tax assessed: *10/15/2009* | $2,038.54 | Pymt interval:(monthly over 60 months)<br>Pymt amt/interval = $28.31<br>Begin date: 12/15/2010<br>End date: 12/15/2015<br>Interest Rate 0%<br>Total Payout Amount $2,038.54 |
| | TOTAL OWED:<br>$165,035.91 | TOTAL PRIORITY MONTHLY PAYMENTS: $2,750.60 |

C.    Classified Claims and Interests

1.    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | Secured claim of: US Bank<br>Name of Claimant: *US BANK as trustee for Aurora Bank Commercial Services*<br>Collateral description: *REAL ESTATE*<br>Collateral value = $912,606.79<br>Priority of security int.<br>Principal owed = $912,606.79<br>Pre-pet. arrearage | NO | YES | Pymt interval: monthly $6,696.34<br>Pymt amount:<br>Begin date: 12/15/2010<br>End date: 12/15/2020<br>Interest rate 8%<br>Total payout 100%<br>Treatment of Lien :<br>REWRITE LOAN; Amortized over 30 years; Payable in 10 years |

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | Secured claim of: Minsa Corporation<br><br>Name of Claimant: Minsa Corporation<br><br>Collateral description: Equipment<br><br>Priority of security int.<br><br>Principal owed = approx. $260,000 Pre-pet. arrearage amount= $ | NO | YES | Pymt interval:     Monthly<br>Pymt amt/interval:     $1,729.79<br><br>Begin date: 12/15/2010<br>End date: 12/15/2013<br>Interest rate 7%<br>Total payout ___ %<br>Treatment of Lien :<br>Fully amortized over 30 years; payable in 3 years |

2.    Classes of Priority Unsecured Claims:

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6) and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all classes containing Debtor's 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7)priority unsecured claims and their treatment under this Plan (see Exhibit G for more detailed information about each priority unsecured claim).

We believe there are no unsecured priority claims.

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 4 | Priority unsecured claim pursuant 1 Total amt of claims = -0- | N/A | |
| | *NOT APPLICABLE.* | | *NOT APPLICABLE.* |

3.    Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The following chart identifies this Plan's treatment of the class containing _all_ of Debtor's general unsecured claims (see Exhibit H for detailed information about each general unsecured claim):

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | General unsecured claims<br><br>Total amt of claims = $91,733.67 | YES | Pymt interval (monthly over 60 months)<br><br>Pymt amt/interval<br><br>Begin date 11/1/2010          $1,528.89<br><br>End date 11/1/2015<br><br>Interest rate 0%<br>Total payout      $91,733.67 |

4.    Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and limited partners. If the Debtor is an individual, the Debtor is the interest holder.

The following chart identifies the Plan's treatment of the class of interest holders (see Exhibit I for more detailed information about each interest holder):

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|-----------|
| 6 | Eleanor Lopez as trustor & trustee of the Eleanor Lopez Revocable Living Trust – 100% shareholder | N/A | N/A |

D.    Means of Effectuating the Plan

    1.    Funding for the Plan

The Plan will be funded by the following: earnings of Debtor; potential capital infusion by a third party and/or a personal loan from its vice-president/general manager, Philip Manly.

    2.    Post-confirmation Management

Post confirmation management will continue by Philip Manly.

    3.    Disbursing Agent

Philip Manly shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve no bond and shall receive nothing for distribution services rendered and expenses incurred pursuant to the Plan.

E.    Risk Factors

The proposed Plan has the following risks:

The debtor may not be able to meet projections in order to fund the plan and/or the plan will be rejected by US Bank, the secured creditor, who will then foreclose on the subject property.

F.   Other Provisions of the Plan

    1.   Executory Contracts and Unexpired Leases

    a.   Assumptions

    The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan (see Exhibit C for more detailed information on unexpired leases to be assumed and Exhibit D for more detailed information on executory contracts to be assumed):

    The debtor has a lease with Eleanor Lopez, for the rental of the building.

    There are no other unexpired leases or executory contracts to be assumed.

    However, Debtor does have existing contracts providing service to various customers, which they will continue servicing as a matter of ongoing business practice.

    Debtor does not wish to make a customer list available at this time in order to keep any competitors from obtaining said list.

    b.   Rejections

    On the Effective Date, the following executory contracts and unexpired leases will be rejected: None.

    The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section {I.B.3.} of this document for the specific date.

1   THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM

2   ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS NOT

3   APPLICABLE. Any claim based on the rejection of a contract or

4   lease will be barred if the proof of claim is not timely filed,

5   unless the Court later orders otherwise.

6       2.    Changes in Rates Subject to Regulatory Commission

7             Approval:

8       This Debtor is not subject to governmental regulatory

9   commission approval of its rates·

10      3.    Retention of Jurisdiction.

11      The Court will retain jurisdiction to the extent provided

12  by law.

13  G.   Tax Consequences of Plan

14      CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN

15  MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN

16  ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure

17  of possible tax consequences is intended solely for the purpose

18  of alerting readers about possible tax issues this Plan may

19  present to the Debtor.  The Proponent CANNOT and DOES NOT

20  represent that the tax consequences contained below are the only

21  tax consequences of the Plan because the Tax Code embodies many

22  complicated rules which make it difficult to state completely and

23  accurately all the tax implications of any action.

24      The following are the tax consequences which the Plan will

25  have on the Debtor's tax liability: NONE.

26                              IV.

27          CONFIRMATION REQUIREMENTS AND PROCEDURES

28  PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN

1  SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

2  CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The

3  following discussion is intended solely for the purpose of

4  alerting readers about basic confirmation issues, which they may

5  wish to consider, as well as certain deadlines for filing claims.

6  The proponent CANNOT and DOES NOT represent that the discussion

7  contained below is a complete summary of the law on this topic.

8      Many requirements must be met before the Court can confirm a

9  Plan.  Some of the requirements include that the Plan must be

10  proposed in good faith, acceptance of the Plan, whether the Plan

11  pays creditors at least as much as creditors would receive in a

12  Chapter 7 liquidation, and whether the Plan is feasible.  These

13  requirements are not the only requirements for confirmation.

14  A.  Who May Vote or Object

15      1.  Who May Object to Confirmation of the Plan

16      Any party in interest may object to the confirmation of the

17  Plan, but as explained below not everyone is entitled to vote to

18  accept or reject the Plan.

19      2.  Who May Vote to Accept/Reject the Plan

20      A creditor or interest holder has a right to vote for or

21  against the Plan if that creditor or interest holder has a claim

22  which is both (1) allowed or allowed for voting purposes and (2)

23  classified in an impaired class.

24      a.  What Is an Allowed Claim/Interest

25      As noted above, a creditor or interest holder must first

26  have an allowed claim or interest to have the right to vote.

27  Generally, any proof of claim or interest will be allowed, unless

28  a party in interest brings a motion objecting to the claim.  When

an objection to a claim or interest is filed, the creditor or
interest holder holding the claim or interest cannot vote unless
the Court, after notice and hearing, either overrules the
objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE HAS
NOT YET BEEN SET.

A creditor or interest holder may have an allowed claim or
interest even if a proof of claim or interest was not timely
filed. A claim is deemed allowed if (1) it is scheduled on the
Debtor's schedules and such claim is not scheduled as disputed,
contingent, or unliquidated, and (2) no party in interest has
objected to the claim. An interest is deemed allowed if it is
scheduled and no party in interest has objected to the interest.
Consult Exhibits F through L to see how the Proponent has
characterized your claim or interest.

b.    What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the
right to vote if it is in a class that is _impaired_ under the
Plan. A class is impaired if the Plan alters the legal,
equitable, or contractual rights of the members of that class.
For example, a class comprised of general unsecured claims is
impaired if the Plan fails to pay the members of that class 100%
of what they are owed.

In this case, the Proponent believes that classes 3 (secured
creditors) and 5 (general unsecured creditors)are impaired and
that holders of claims in each of these classes are therefore
entitled to vote to accept or reject the Plan. The
Proponent believes that classes 1 (administrative) and 2

(priority tax claims) are unimpaired and that holders of claims in each of these classes therefore do not have the right to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

    3.   Who is <u>Not</u> Entitled to Vote

    The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8) and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

    4.   Who Can Vote in More Than One Class

    A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

5.   Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section {IV.A.8.}.

6.   Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

7.   Treatment of Nonaccepting Classes

As noted above, even if _all_ impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code.  The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

8.   Request for Confirmation Despite Nonacceptance by
     Impaired Class(es)

The party proposing this Plan will asks <u>the Court</u> to confirm this Plan by cramdown on impaired classes both secured and unsecured if any of these classes do not vote to accept the Plan.

Please note that the proposed Plan treatment described by this Disclosure Statement <u>cannot</u> be crammed down on the following classes: None. AS A RESULT, IF ANY OF THESE CLASSES DOES <u>NOT</u> VOTE TO ACCEPT THE PLAN, THE PLAN WILL <u>NOT</u> BE CONFIRMED.

B.   Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reasons: The assets of the Debtor's estate are secured and subject to the lien of US Bank. Upon liquidation, there would be no funds available for unsecured creditors.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation.  (See Exhibit E for a detailed explanation of how the following assets are valued). This information is provided by Philip Manly, Vice-President/General Manager of Food-O-Mex Corporation.

PLEASE SEE NEXT PAGE.

ASSETS VALUE AT LIQUIDATION VALUES:

CURRENT ASSETS:
| | | | |
|---|---|---|---|
| a. | Cash on hand | $ | 92,669.28 |
| b. | Accounts receivable | $ | 238,495.80 |
| c. | Inventories | $ | 100,000.00 |
| | **TOTAL CURRENT ASSETS** | $ | **431,165.08** |

FIXED ASSETS:
| | | | |
|---|---|---|---|
| a. | Office furniture & equipment | $ | 20,000.00 |
| b. | Machinery & equipment | $ | 200,000.00 |
| c. | Automobiles | $ | 10,000.00 |
| d. | Building & Land[1] | $ | 1,000,000.00 |
| | **TOTAL FIXED ASSETS** | $ | **1,230,000.00** |

OTHER ASSETS:
| | | | |
|---|---|---|---|
| a. | Customer list | $ | 0.00 |
| b. | Other intangibles | $ | undeterminable |
| | TOTAL OTHER ASSETS | $ | 0.00 |

**TOTAL ASSETS AT LIQUIDATION VALUE**         $ **1,661,165.00**
                                              ==============

| | | |
|---|---|---|
| Less: Secured creditor's recovery[2] | $ | 1,172,606.70 |
| Less: Chapter 7 trustee fees and expenses | $ | n/a |
| Less: Chapter 11 administrative expenses | $ | 25,000.00 |
| Less: Priority claims, (taxes) excluding administrative expense claims | $ | 165,035.91 |
| Less: Debtor's claimed exemptions | $ | none |
| | | ========= |
| (1) Balance for unsecured claims | $ | 298,522.60 |
| (2) Total amt of unsecured claims | $ | 91,733.67 |

% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE
    OR RETAIN IN A CH. 7 LIQUIDATION[3]: = ____100%____
% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE
    OR RETAIN UNDER THIS PLAN:         = ____100%____

---

[1] Building and land's total value is estimated at $2,000,000. However, the Debtor only owns 50% interest in said property. 50% is owned by Eleanor Lopez.

[2] The deficiency portion of a secured recourse claim must be added to the total amount of unsecured claims.

[3] If this percentage is greater than the amount to be paid to the unsecured creditors on a "present value basis" under the Plan, the Plan is not confirmable unless Proponent obtains acceptance by every creditor in the general unsecured class

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative ($25,000) | 100% | -0- |
| Priority Tax Claims Class 2 (total ≈ $165,035.91) | 100% | -0- |
| Secured Creditors Class 3 (total= $1,172,606.70) | 100% | |
| General Unsecured Creditor Class 5 (total =$91,733.67) | 100% | -0- |

C.   Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

/ / /

/ / /

/ / /

1  Cash Debtor will have on hand by Effective Date      $ 92,669.00

2  To Pay: Administrative claims                         -$ 25,000.00

3  To Pay: Statutory costs & charges              -      $0.00

4  To Pay: Other Plan Payments due                $- 12,705.62
           on Effective Date
5
6  Balance after paying these amounts..............  $ 54,963.38

7  The sources of the cash Debtor will have on hand by the Effective

8  Date, as shown above are:

9       $ 92,669.28   Cash in DIP Account now

10      +_____   Additional cash DIP will accumulate from
11                     net earnings between now and Effective Date

12      +____0.00___   Borrowing

13      +_____   Capital Contributions

14      +_____   Other

        $ 92,669.28   Total
15
16     Borrowing is not applicable at this time.

17     Capital contribution if necessary will be from potential

18  investors. Additionally, if necessary, the vice-president/general

19  manager will make a cash contribution to debtor to fund the plan.

20     The second aspect considers whether the Proponent will have

21  enough cash over the life of the Plan to make the required Plan

22  payments.

23     The Proponent has provided financial statements which

24  include both historical and projected financial information.

25  Please refer to Exhibit B for the relevant financial statements.

26  YOU ARE ADVISED TO CONSULT WITH YOUR· ACCOUNTANT OR FINANCIAL

27  ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL

28  STATEMENTS.

1  In summary, the Plan proposes to pay $12,705.62 each month.
2  The final Plan payment is expected to be paid on December 15,
3  2015. The Plan Proponent contends that Debtor's financial
4  projections are feasible.

5  Debtor states that all accounting information provided has
6  been prepared on an accrual basis.

7  Debtor's historical financial statements, cash flow, after
8  paying operating expenses and post-confirmation, taxes, in the
9  three years preceding the filing of this bankruptcy case have
10  fluctuated due to the skyrocketing prices of corn which is
11  essential to Debtor's manufacturing of corn tortillas. In
12  addition, Debtor was unable to raise prices fast enough to
13  recover the increase in the cost of corn. Therefore said figures
14  are not proper to analyze at this time.

15  Furthermore, as discussed earlier in the Disclosure
16  Statement at Section {II.E.4}, Debtor has implemented procedures
17  to decrease costs and increase income.

18  EFFECT OF CONFIRMATION OF PLAN

19  A.   Discharge

20  This Plan provides that upon confirmation of the plan,
21  Debtor shall be discharged of liability for payment of debts
22  incurred before confirmation of the Plan, to the extent specified
23  in 11 U.S.C.§ 1141.  However, the discharge will not discharge
24  any liability imposed by the Plan.

25  B.   Revesting of Property in the Debtor

26  Except as provided in Section {V.E.}, and except as provided
27  elsewhere in the Plan, the confirmation of the Plan revests all
28  of the property of the estate in the Debtor.

C.   Modification of Plan

1    The Proponent of the Plan may modify the Plan at any time

2    before confirmation.  However, the Court may require a new

3    disclosure statement and/or revoting on the Plan.

4    The Proponent of the Plan may also seek to modify the Plan

5    at any time after confirmation only if (1) the Plan has not

6    been substantially consummated _and_ (2) the Court authorizes the

7    proposed modifications after notice and a hearing.

8    D.    Post-Confirmation Status Report

9    Within 120 days of the entry of the order confirming the

10   Plan, Plan Proponent shall file a status report with the Court

11   explaining what progress has been made toward consummation of the

12   confirmed Plan.  The status report shall be served on the United

13   States Trustee, the twenty largest unsecured creditors, and those

14   parties who have requested special notice. Further status reports

15   shall be filed every 120 days and served on the same entities.

16   E.    Quarterly Fees

17   Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date

18   of confirmation shall be paid to the United States Trustee on or

19   before the effective date of the plan.  Quarterly fees accruing

20   under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to

21   the United States Trustee in accordance with 28 U.S.C.§1930(a)(6)

22   until entry of a final decree, or entry of an order of dismissal

23   or conversion to chapter 7.

24   F.    Post-Confirmation Conversion/Dismissal

25   A creditor or party in interest may bring a motion to

26   convert or dismiss the case under §1112(b), after the Plan is

27   confirmed, if there is a default in performing the Plan. If the

28   Court orders, the case converted to Chapter 7 after the Plan is

confirmed, then all property that had been property of the

Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

G.   Final Decree

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Date: May 27, 2010

Philip Manly
Name and Identity of Plan Proponent


Signature of Plan Proponent


Signature of Attorney for Plan Proponent


Robert S. Altagen
Name of Attorney for Plan Proponent


Law offices of Robert S. Altagen
Name of Law Firm for Plan Proponent

## VI.  SUPPORTING DECLARATIONS

### DECLARATION OF PHILIP Manly

I, PHILIP Manly do hereby declare and state as follows:

1.    I am the Vice-President/General Manager of Food-O-Mex Corporation, the above captioned Debtor and Debtor in Possession. I make the following declaration based on my own personal knowledge, information and belief.

2.    The Debtor is the Debtor in the above-captioned case having filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 1, 2009, and for all times thereafter it has remained in possession.

3.    The Debtor was incorporated under the laws of the State of California on or about 1973 and is in the business of manufacturing and distributing tortillas.

4.    In my capacity as the Vice-President/General Manager of the Debtor, I have been involved in the supervision of the operation, which as of the time of the filing of the Chapter 11 petition was located at 2928 N. Main Street, Los Angeles, Ca 90031.

5.    The Debtor is 50% owner of the real property located at 2928 N. Main Street, Los Angeles, Ca.  The other 50% ownership belongs to Eleanor Lopez, as the Trustor and Trustee of the Eleanor Adela Lopez Revocable Living Trust.

6.    The Debtor has taken measures to reorganize its financial affairs and rehabilitate its business.

7.    Debtor states that the actual financials during the month of April reflect operating at a profit. It is my opinion that given the time to reorganize the financial affairs and to rehabilitate the business that the Debtor will continue to

operate at a profit, that the profits will formulate the basis
for a Chapter 11 plan of reorganization, and with the Chapter 11
plan, the creditors will receive substantially more than possible
if this case is liquidated in either Chapter 7 or Chapter 11.

8.    In addition, I have also actively searched for and
continue to search for capital contribution from third parties
and will invest personal funds into the company should it become
necessary.

9.    I am responsible for the day to day operations of
Debtor and have prepared all financial statements submitted
during the course of bankruptcy, which have been submitted on an
accrual basis.

I declare that the foregoing statements are true and correct
to the best of my knowledge, information and belief under the
penalty of perjury and if called upon to testify thereon as a
witness I would be competent to so testify.

Executed this _2*_ th day of May in Los Angeles, California.

Philip Manly

| In re:   FOOD-O-MEX CORPORATION, Debtor(s). | CHAPTER 11<br>CASE NUMBER 2:09-BK-36737-ER |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 1111 CORPORATE CENTER DRIVE, MONTEREY PARK CA 91754

A true and correct copy of the foregoing document described as FOOD-O-MEX CORPORATION'S CHAPTER 11 DISCLOSURE STATEMENT will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 5/27/2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Robert S Altagen    rsaink@earthlink.net
- Stuart I Koenig    Skoenig@cmkllp.com
- Dare Law    dare.law@usdoj.gov
- Douglas G Tennant    dtennant@frankel-tennant.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On 5/27/2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Judge Ernest Robles
USBC - Central District
255 E. Temple Street. # 1568
Los Angeles, CA 90012

Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 5/27/2010 | M. Jacqueline Torres | /s/ |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

January 2009